IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KORDY RICE,

        Plaintiff,

    v.

R. McCORD, et al.,

        Defendants.

No. 2:16-CV-0562-WBS-DMC-P

FINDINGS AND RECCOMMENDATIONS

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are: (1) defendant Drake's motion for summary judgment (ECF No. 40); and (2) defendants McCord and Goodrich's motion for summary judgement (ECF No. 41).

## I. PLAINTIFF'S ALLEGATIONS

        This action proceeds on plaintiff's original civil rights complaint. See ECF No. 1. Plaintiff names the following as defendants: (1) R. McCord; (2) C. Drake; and (3) Goodrich. All defendants were employed as correctional officers at California State Prison – Sacramento (CSP-Sac.) at the time of the underlying incident. At all relevant times to this action, plaintiff was an inmate at CSP-Sac. Plaintiff's complaint asserts two claims, (1) cruel and unusual punishment, and (2) retaliation. Plaintiff alleges the following:

1

## Cruel and Unusual Punishment

After a medical appointment in which plaintiff's walking cane was taken away by a medical care provider, plaintiff requested a wheelchair to transport him back to his building. This request was denied, and defendant McCord became "verbally aggressive" with plaintiff and insisted he return to his building without the wheelchair. Plaintiff refused. After this, defendants McCord and Drake grabbed plaintiff by the arms, lifted him out of his chair, and proceeded to drag him away. After about fifteen yards, plaintiff used his one good leg to jump upright and protested being dragged back to his building. Drake and plaintiff were in the midst of exchanging words when McCord slammed plaintiff to the ground. This event was captured on video and saved into the prison's evidence files. Also, while being escorted by Drake and McCord, defendant Goodrich followed behind and later submitted a false report of the event.

## Retaliation

At some point, defendant McCord made it clear to plaintiff that he was aware plaintiff had filed lawsuits against his fellow corrections officers. In retaliation for filing these suits, McCord attempted to separate plaintiff from his walking cane throughout his medical appointment. After he was slammed to the ground, plaintiff filed an excessive force grievance against McCord. The day after filing the grievance, McCord cited plaintiff for violating the prison's rules. Plaintiff also alleges that McCord submitted false documents along with defendant Drake and two more, unnamed officers. According to plaintiff, all of McCord's actions against him throughout this incident were driven by a retaliatory motive.

///
///
///
///
///
///
///
///

# II. THE PARTIES' EVIDENCE

A.    **Defendant C. Drake's Evidence**

Defendant Drake's motion for summary judgement is supported by his separate statement of undisputed facts, see ECF No. 40-3, as well as the declaration of Gabrielle De Santis Nield, see ECF No. 40-4. According to defendant, the following facts are undisputed:

1.    On June 5, 2015, Plaintiff's authority to use a cane he had been issued was rescinded during a medical appointment with a Licensed Vocational Nurse, per a doctor's orders. (ECF No. 1 at p. 4).

2.    Plaintiff returned the cane then announced to the room "I'm not hopping all the way back. I need a wheelchair." (Pltf. Depo. at 39:11 – 39:16; ECF No. 1 at p. 4 – 5.)

3.    Plaintiff alleges the LVN told him that getting a wheelchair was up to the correctional officers. (Pltf. Depo. at 39:20 – 40:8)

4.    Correctional officers do not generally have the power to issue wheelchairs. (Id.)

5.    Plaintiff refused to get up from his chair to return to his cell because he had not gotten a wheelchair. (Pltf. Depo at 42:20 – 42:22; ECF No. 1 at p. 4 – 5.)

6.    After Plaintiff's refusal, Correctional Officers McCord and Drake each took hold of one of Plaintiff arms and began escorting him back to his building. (ECF No. 1 at p. 4 – 5.)

7.    About 15 feet into the escort, Plaintiff jumped up on his good leg and "resisted and told them, you know, you're not going to drag be across the yard." (Pltf. Depo. at 42:13 – 42:22.)

8.    Plaintiff alleges that while moving him, Drake asked Plaintiff if this is what he wanted to do, and when he turned his head to answer, McCord slammed him to the ground. (ECF No. 1 at p. 5.)

9.    Plaintiff claims he has chronic low back pain as a result of the incident. (Pltf. Depo. at 47:15 – 47:22.)

10.    Plaintiff does not allege any other injuries as a result of the incident. (Pltf. Depo. at 47:23 – 47:24.)

11.    Plaintiff's only claim against Drake is for failure to protect. (Pltf. Depo at 4:25 – 5:14; 58:24 – 59:9.)

12.    Plaintiff believes that Drake could have protected him from being slammed to the ground by McCord by holding on to Plaintiff's arm. (Pltf. Depo at 58:24 – 59:9)

13.    Drake did not use excessive force during the escort. (Pltf. Depo at 4:22 – 4:24.)

3

14. As a result of the incident, Plaintiff received a Serious Rules Violation Report and was charged with and found guilty of resisting an officer. (Pltf. Depo. at 53:2 – 54:10; Rules Violation Report, Incident Log No. BPSU-15-06-007.)

**B.** **Defendants Goodrich and R. McCord's Evidence**

Defendants Goodrich and McCord's motion for summary judgement is supported by their separate statement of undisputed facts, <u>see</u> ECF No. 41-3, as well as the declarations of R. McCord, <u>see</u> ECF No. 41-4, G. Goodrich, <u>see</u> ECF No. 41-5, D. Bodenhamer, <u>see</u> ECF No. 41-6, B. Hendricks, <u>see</u> ECF No. 41-7, and J. Spaich, <u>see</u> ECF No. 41-8. According to defendants, the following facts are undisputed:

Parties

1. On June 8, 2015, Plaintiff Kordy Rice was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) housed at California State Prison, Sacramento (CSP-Sac). (Compl., ECF No. 1 at 1.)

2. On June 8, 2015, Defendant McCord was employed at CSP-Sac as a Correctional Officer. (McCord Decl. at ¶ 2.)

3. On June 8, 2015, Defendant Goodrich was employed at CSP-Sac as a Correctional Officer. (ECF No. 1 at 4; Goodrich Decl. at ¶¶ 1-2.)

Rice's Claims

4. Rice testified during his deposition that his claims against Officer McCord concern excessive force and retaliation. (Rice Dep. at 14:16-15:4.)

5. Rice testified during his deposition that his sole claim against Officer Goodrich is a claim for failure to protect him from being dragged down a hallway. (Rice Dep. at 57:9-58:15.)

Material Facts Regarding the Decision to Remove Rice's Cane and Policies Governing Medical Equipment

6. On or about June 1, 2015, D. Bodenhamer, a physician assistant at CSP-Sac, made the decision that Rice did not have a medical need for a cane based on staff observations, findings from a physical exam, and x-ray imaging showing that Rice did not have a significant knee injury. (Rice Dep. at 28:5-9; Bodenhamer Decl. at ¶¶ 3-8 & Exs. B-C to Bodenhamer Decl.)

///

///

4

7. Custodial staff at CSP-Sac generally do not have authority to provide inmates such as Rice with wheelchairs, canes, or other durable medical equipment. (Rice Dep. at 39:20-40-8; Bodenhamer Decl. at ¶¶ 6-7 & Ex. A to Bodenhamer Decl.)

8. At CSP-Sac, qualified medical professionals make determinations regarding whether an inmate needs a cane or a wheelchair based on medical necessity. (Bodenhamer Decl. at ¶¶ 6-7 & Ex. A to Bodenhamer Decl.)

9. Officer McCord did not make the decision that Rice's cane should be returned to medical staff. (McCord Decl. at ¶ 12; Bodenhamer Decl. at ¶¶ 6-7 & Ex. A to Bodenhamer Decl.)

<u>Material Facts Regarding the June 8, 2015 Use of Force</u>

10. On June 8, 2015, Rice went to the Triage and Treatment Area (TTA) in his facility so that his cane could be returned to medical staff. (Rice Dep. at 28:5-9; Bodenhamer Decl. at ¶ 8 & Ex. D to Bodenhamer Decl.; Goodrich Decl. at ¶ 3.)

11. Neither Officer McCord nor Officer Goodrich were responsible for scheduling the June 8, 2015 appointment. (McCord Decl. at ¶ 12; Goodrich Decl. at ¶ 3.)

12. At his June 8, 2015 appointment, Rice told nursing staff that he needed a wheelchair but they denied his request. (ECF No. 1 at 4; Rice Dep. at 39:5-25.)

13. After medical staff did not provide Rice with a wheelchair, Rice refused to get up from his seat and leave the medical clinic. (Rice Dep. at 42:2-7.)

14. Because Rice "refused to get up," Officers McCord and Drake "grabbed an arm and lifted [him] off the chair…" (Rice Dep. 42:2-4.)

15. Officers McCord and Drake attempted to escort Rice from the clinic, but Rice was dragging his feet. At times, Rice's feet were dragging on the ground because he was refusing to cooperate and walk forward, and Officers McCord and Drake were essentially carrying him. At no point was Rice's entire body dragged on the ground and he did not appear to be in pain. (Goodrich Decl. at ¶ 4.)

16. As Officers McCord and Drake approached the sally port door, Rice started pulling away from Officer Drake with a thrashing motion and resisted staff. (McCord Decl. at ¶ 4; Hendricks Decl., ¶ 4 & Ex. B to Hendricks Decl.; June 8, 2015 video at 1:02-08; Rice Dep. at 42:18-22.)

17. It appeared to Officer McCord that Officer Drake was knocked off balance as he went through the door as a result of Rice's behavior. (McCord Decl. at ¶ 5; June 8, 2015 video at 1:02-1:10.)

///

18.     In order to effect custody and gain Rice's compliance, Officer McCord grabbed Rice's upper shoulder with his right hand and placed his left hand on Rice's left arm. Officer McCord then used his right leg to sweep Rice's right leg and bring Rice to the ground. (McCord Decl. at ¶ 6; June 8, 2015 video at 1:05-1:10.)

19.     Rice testified that Officer Goodrich could not have possibly intervened in the taking of Rice to the ground. (Rice Dep. at 58:8-18; *see also* Goodrich Decl. at ¶ 5.)

20.     After Rice was on the ground, Officer Drake held Rice down and placed his hands on Rice's upper shoulder. Officer McCord held Rice at his waist, Officer Goodrich held his legs, and another officer applied leg restraints. Other officers then escorted Rice from the area. (McCord Decl. at ¶ 7; June 8, 2015 video at 1:10-1:48; Goodrich Decl. at ¶ 6.)

21.     In Officer McCord's judgment, the force that he used to bring Rice to the ground was necessary to gain Rice's compliance in a safe and efficient manner, and was the least amount of force needed to regain control of Rice. (McCord Decl. at ¶ 10.)

22.     Rice's behavior presented a danger because he was pulling away from the escort. (McCord Decl. at ¶ 10; June 8, 2015 video at 1:01-1:10.)

23.     Officer McCord would have made the decision to take Rice to the ground regardless of whether he had knowledge of a separate lawsuit filed by Rice, because Rice refused to act appropriately during the escort and his behavior threatened the safety and security of the institution. (McCord Decl. at ¶ 11.)

24.     Rice allegedly received a back injury from being put on the ground, but did not notice any injury on June 8, 2015. (Rice Dep. at 16:1-2, 47:15-20.)

25.     Rice did not receive the alleged back injury from being dragged by Officers McCord and Drake. (June 10, 2015 video interview, SAC-FAB-15-06-0607, at 2:00-2:10.)

26.     Rice received a medical evaluation after the incident and the examining staff noted no injuries. (Rice Dep. at 47:12-48:2; Ex. A to Rice Dep. at 30, 32.)

27.     Officer Goodrich submitted a staff report after the incident, as he was required to do under the California Code of Regulations, and did not submit any false documents in connection with that report. (Goodrich Decl. at ¶ 8; June 8, 2015 video at 1:01-1:10.)

28.     Officer Goodrich did not treat Rice differently because of his race and did not act out of a desire to retaliate against Rice. (Goodrich Decl. at ¶¶ 10-11.)

29.     Rice's ethnicity did not factor into Officer McCord's decision to use force on June 8, 2015. (McCord Decl. at ¶ 15.)

**Material Facts Regarding the Disciplinary Action Against Rice**

30.     After the June 8, 2015 incident, Officer McCord submitted a disciplinary report charging Rice with attempting or threatening the use of force. (McCord Decl. at ¶ 8; Rice Dep. at 14:23-15:13, 53:2-54:22.)

31.     Officer McCord did not submit any false documents in connection with the disciplinary report regarding the incident on June 8, 2015. (McCord Decl. at ¶ 13; June 8, 2015 video at 1:01-1:10.)

32.     Officer McCord did not treat Rice differently because of his race, and Rice's ethnicity did not factor into the officer's decision to issue a disciplinary report. (McCord Decl. at ¶ 15.)

33.     Officer McCord did not act out of a desire to retaliate against Rice and would have issued a disciplinary report regardless of whether Rice had submitted a prison grievance about the June 8, 2015 incident. (McCord Decl. at ¶ 14.)

**Material Facts Regarding Rice's Grievance**

34.     The CDCR has an administrative mechanism for inmates under its jurisdiction to appeal any policy, decision, action, condition, or omission by the agency or by CDCR staff that has a material adverse effect upon the inmate's health, safety, or welfare. (Cal. Code Regs. tit. 15, § 3084.1(a) (2015 rev.).)

35.     In general, an inmate must proceed through the third and final level of review to complete the administrative process and exhaust available remedies. (Spaich Decl. at ¶¶ 3–4; Cal. Code Regs. tit. 15, § 3084.7(a)-(d); *see also* Cal. Code Regs. tit. 15, § 3084.1(b).)

36.     An inmate is limited to one issue or related set of issues per each appeal form submitted. (Cal. Code Regs. tit. 15, § 3084.2(a)(1).)

37.     An appeal describing staff behavior that violates the law or prison policy may be processed as a staff complaint and the first level of review waived. (Cal. Code Regs. tit. 15, §§ 3084.5(b)(4)(A), 3084.7(b), 3084.9(i).)

38.     Inmates must list "all staff member(s) involved" in an incident and describe their involvement in the incident to exhaust claims against individual staff members. (Cal. Code Regs. tit. 15, § 3084.2(a)(3)-(4).)

39.     Grievances are not deemed exhausted for any new "issue, information, or person" later named during the grievance process that was not included in the originally submitted grievance form. (Cal. Code Regs. tit. 15, § 3084.1(b).)

40.     Rice submitted a grievance regarding a June 8, 2015 use of force that was given log number SAC-B-15-01938 and processed as a staff complaint. (Rice Dep. 48:23-49:7, 49:21-50:18; Ex. A to Rice Dep. at 1-11; Spaich Decl., Ex. A.)

41.     In grievance SAC-B-15-01938, Rice stated that he was called to a medical appointment on June 8, 2015, was "dragged" from the "BTTA" by Officers McCord and Drake, and was "tripped" and "slammed" on the ground by Officer McCord. (Rice Dep. at 50:14-51:13; Ex. A to Rice Dep. at 1-11; Spaich Decl., Ex. A.)

42.     Rice's grievance regarding the June 8, 2015 use of force named Officers McCord and Drake as the individuals who were involved in the incident. (Rice Dep. 51:14-52:13; Ex. A to Rice Dep. at 1-11; Spaich Decl., ¶ 6 & Ex. A to Spaich Decl.)

43.     Rice did not name Officer Goodrich in his initial grievance regarding the June 8, 2015 use of force. (Rice Dep. 50:14-52:13; Ex. A to Rice Dep. at 1-11; Spaich Decl., Ex. A.)

44.     Rice named Officer Goodrich during the grievance process when expressing dissatisfaction with the decision at the second level of review and, at that time, included a new allegation that Officer Goodrich failed to protect him. (Rice Dep. 50:14-52:13; Ex. A to Rice Dep. at 5; Spaich Decl., Ex. A.)

45.     The prison responded to Rice's grievance at the third level of review but did not address allegations against Officer Goodrich in that response. (Spaich Decl. at ¶ 6 & Ex. A to Spaich Decl.)

46.     Rice did not submit a separate grievance alleging that, after the June 8, 2015 incident, Officers McCord and Goodrich retaliated against him by filing false reports or a disciplinary action. (Rice Dep. 54:19-55:7, 56:5-57:5; Ex. A to Rice Dep. at 1-11.)

47.     Rice was not afraid to submit a grievance alleging that officers retaliated against him for grieving the June 8, 2015 use of force. (Rice Dep. 57:2-5.)

**C.     Plaintiff's Evidence**

Plaintiff's opposition to both motions for summary judgment is supported by his statement of disputed issues, see ECF No. 44, pgs. 10-13, his own declaration, see ECF No. 44, pgs. 6-8, and two sets of attached exhibits, both marked "A-C", id. at 14-44. According to plaintiff, the following are genuine issues of material fact that require denial of defendants' motions:

1.     Whether plaintiff was given a cane by Reasonable Accommodation Panel (RAP) (see exhibit A)

2.     Whether correctional officers submitted false reports to primary care provider Andrew Nangalama claiming to have seen plaintiff dancing in cell.

3.     Whether correctional officers submitted false reports to physician assistant D. Bodenhamer.

8

4. Whether physician assistant D. Bodenhamer physically saw plaintiff before writing the 6-1-2-15 order to recind [sic] cane.

5. Whether x-ray conducted on 5-18-2015 was only looking for fractured or broken bone.

6. Whether plaintiff's primary care provider chose not to recind [sic] cane after reviewing x-ray and hearing correctional officers report of witnessing plaintiff dancing in cell.

7. Whether the June 8, 2015 was for plaintiff to be evaluated by a doctor to determin[sic] if plaintiff needed walking cane.

8. Whether June 8, 2015 medical visit had predetermined decision without a doctor evaluating plaintiff.

9. Whether officers McCord and Drake chose to conduct improper escort of plaintiff after his medical visit (see exhibit B).

10. Whether officers McCord and Drake chose to drag plaintiff down hallway by his arms.

11. Whether officer Goodrich watched officer Drake and McCord drag plaintiff down hallway and chose not to intervene (see ex. C, Goodrich Decl. at 4)

12. Whether officer Goodrich chose not to write in his report he witnessed officers McCord and Drake drag plaintiff down hallway because it would have been unfavorable towards his co-workers. (Goodrich decl. at [blank])

13. Whether officer McCord chose not to write how he and Drake dragged plaintiff down hallway in his report, because the act was improper.

14. Whether officer Drake chose not to write how he and McCord dragged plaintiff down hallway in his report, because the act was improper (see ex. B)

15. Whether officer McCord became with plaintiff calling him a bitch because plaintiff chose not to return to building without wheelchair (pltf. decl. 2-12)

16. Whether officer McCord became angry enough with plaintiff that he chose to carry out an improper escort of plaintiff.

17. Whether officer McCord was so angry that he had to drag plaintiff down the hallway he chose to slam plaintiff on ground (see video) June 8, 2015.

18. Whether officer Drake was ever knocked off balance by plaintiff.

///

19.     Whether plaintiff ever made side to side thrashing motions.

20.     Whether officer Goodrich's name was provided to Appeals Coordinator affording them the opportunity to correct any alleged misconduct.

21.     Whether plaintiff's grievance was ever screened out for new or added information.

22.     Whether plaintiff's injury was visable [sic] to medical staff who evaluated plaintiff after June 8, 2015 incident.

23.     Whether plaintiff's injury was consistent with him being slammed on concrete ground.

24.     Whether the force used by McCord was used in good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm.

25.     Whether McCord's, Drake's, and Goodrich's non fully detailed report violated California Code of Regulations title 15 and CDCR operational procedures (O.P) (Cal code regs tit 15 § 3268.3(a)(1); CDCR O.P 33030.19(e)(7); P.C. 118.1)

26.     Whether McCord's rule violation report written three days after June 8, 2015 incident was an attempt to retaliate against plaintiff for plaintiff filing a use of excessive/unnecessary force complaint against McCord and Drake.

27.     Whether McCord's rule violation report written three days after June 8, 2015 incident violated Department Operations manual (D.O.M) CCR. 15, and CDCR O.P rule to immediately report use of force (Cal Code Regs 15 § 3268.3(1)).

28.     Whether McCord's Rule violation report describes a different event than what video footage shows (see June 8, 2015 video).

29.     Whether Goodrich's report of June 8, 2015 was false and describes something different than video footage (see June 8, 2015 video).

30.     Whether Goodrich's report of June 8, 2015 was false and describes something different than video footage (see June 8, 2015 video)

31.     Whether plaintiff's constitutional rights were violated.

32.     Whether the right violated was clearly established.

33.     Whether the defendants were personally responsible for the violating of plaintiff's rights.

34.     Whether defendants qualify for immunity.

///

///

Plaintiff's opposition also includes two separate sets of exhibits marked "A-C", each addressing both pending motions for summary judgement. See ECF No. 44, pgs. 14-44.

### Exhibits addressing Defendants Goodrich and McCord's Motion

Exhibit A          Reasonable Accommodation Panel (RAP) Response regarding plaintiff's request for a walking cane to get to his treatment group. RAP states that "[t]he Interim Accommodation of a cane will remain, pending a re-evaluation with the Primary Care Physician."

ECF No. 44, pg. 15.

Exhibit B          Excerpt from Operational Procedure # 129 Psychiatric Services Unit. Outlines procedures for escorting inmates to and from the treatment center.

ECF No. 44, pgs. 16-18.

Exhibit C          Excerpt from "BCOA – Use of Force Participant Workbook," discussing reporting allegations of unnecessary or excessive force. Also included is plaintiff's response to defendant Goodrich and McCord's statement of undisputed facts.

ECF No. 44, pgs. 19-32.

### Exhibits addressing Defendant Drake's Motion

Exhibit A          Reasonable Accommodation Panel (RAP) Response regarding plaintiff's request for a walking cane to get to his treatment group. RAP states that "[t]he Interim Accommodation of a cane will remain, pending a re-evaluation with the Primary Care Physician." Also attached is a preceding Reasonable Accommodation Request submitted by plaintiff.

ECF No. 44, pgs. 33-36.

Exhibit B          Department of Corrections and Rehabilitation Operations Manual excerpt outlining relevant statutes for various forms of misconduct.

ECF No. 44, pgs. 37-38.

Exhibit C          Continuation of the Department of Corrections and Rehabilitation Operations Manual excerpt outlining relevant statutes for various forms of misconduct. Also attached is plaintiff's response to defendant Drake's statement of undisputed facts.

ECF No. 44, pgs. 39-44.

# III. STANDARD FOR SUMMARY JUDGEMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

**IV. DISCUSSION**

In his motion for summary judgment, defendant Drake argues: (1) plaintiff cannot establish a failure-to-protect claim against Drake; and (2) Drake is entitled to qualified immunity. In their separate motion for summary judgment, defendants McCord and Goodrich argue: (1) McCord used reasonable force after plaintiff resisted; (2) Goodrich had no realistic opportunity to intervene; (3) any use of force was de minimus and, therefore, not actionable under the Eighth Amendment; (4) plaintiff failed to exhaust his failure-to-protect claim against Goodrich; (5) McCord and Goodrich are entitled to qualified immunity on plaintiff's Eighth Amendment

///

///

///

claims; (6) plaintiff failed to exhaust his retaliation claim; and (7) McCord and Goodrich did not retaliate.[1]

## A.   Eighth Amendment Claims

Defendants argue plaintiff cannot establish a failure-to-protect claim against Drake, the force used by McCord was reasonable, Goodrich had no reasonable opportunity to intervene, and any use of force was de minimus.  As explained below, the Court finds that there is a genuine issue of material fact regarding plaintiff's excessive force claim against defendant McCord.  The Court, however, finds that both defendants Goodrich and Drake are entitled to summary judgement.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

///

///

///

---

[1]   Defendants McCCord and Goodrich also argue there are no facts to support an equal protection claim.  The Court does not reach this argument because, as outlined below, plaintiff's complaint contains no allegations to support such a claim.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

Under the principles of the Eight Amendment, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).

Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

1. Drake

Defendant Drake contends that, as a matter of law, plaintiff cannot establish a failure-to-protect claim against him. In his motion for summary judgement, Drake argues:

> In the instant case, there is no evidence that Drake subjectively knew of, let alone disregarded, an excessive risk to Plaintiff's safety. There is no evidence that Drake knew McCord was going to take Plaintiff to the ground before it happened. To the contrary, the implication of Plaintiff's account is that McCord's decision to take Plaintiff to the ground was made in the moment, in response to his turning his head towards Drake, and could not have been predicted by anyone. There are no allegations that McCord threatened Plaintiff with physical violence before taking him to the ground, and the take-down's proximity to Plaintiff's turning his head towards Drake implies it was responsive to that action. Accordingly, since there was no warning, there would have been no way for Drake to know what would occur let alone to prevent it.
> Moreover, even assuming arguendo that Plaintiff could establish that Drake had a split-second knowledge of the risk, there is no evidence that Drake could have done anything to stop the take-down by McCord. Plaintiff presents the completely untenable theory that as the take-down was occurring, Drake could have prevented it by keeping hold of Plaintiff. No reasonable jury could find Drake liable for failure to protect based on this speculative assertion. First, the allegation still fails to establish that Drake had knowledge of McCord's actions before they occurred. Given the circumstances, Drake would have had to have gained the awareness and consciously decided to let the take-down continue in a split second between when Plaintiff looked at him and when McCord took Plaintiff to the ground. Second, whether Drake holding on to Plaintiff's arm could have prevented the slam is pure speculation and highly improbable given the speed at which the take-down allegedly occurred. (See Pltf. Depo. at 45:20 – 45:25.) (Plaintiff testifies he was on the ground immediately and it did not take even a few seconds.)
> Accordingly, Plaintiff cannot as a matter of law, based on the undisputed facts, establish that Drake subjectively knew of and intentionally disregarded a risk to Plaintiff, and thus, cannot establish a viable Eighth Amendment deliberate indifference claim against Drake.

ECF No. 40-1, pgs. 6-7.

In his opposition to Drake's motion for summary judgment, plaintiff asserts that Drake did in fact fail to protect him from McCord's excessive use of force, though he provides no evidentiary support. See ECF No. 44, pg. 2. Plaintiff's attached declaration is noticeably devoid of references to this claim. Id. at pgs. 6-8. Moreover, following the submission of defendants'

replies to plaintiff's opposition, plaintiff filed a surreply to their replies. In his surreply, plaintiff asserts the following in support of his Eight Amendment claim against Drake: (1) Drake heard McCord call plaintiff a "bitch" before grabbing plaintiff's right arm; (2) had Drake never helped McCord drag plaintiff away, the situation would not have escalated to McCord slamming plaintiff to the ground; (3) Drake's CDCR training should have informed him that a situation like the one at issue could escalate into violence; and (4) Drake clearly disregarded plaintiff's safety when he chose to assist McCord in dragging him away. See ECF No. 47, pgs. 1-2. The Court finds multiple deficiencies in these arguments.

First, "plaintiff's reply to defendants C. Drakes reply" constitutes an improper surreply and may be disregarded. Second, even if the Court were to consider plaintiff's allegations in the surreply, all are unsupported by evidence. Plaintiff attaches no declaration or other forms of evidence to support the allegations made in the surreply. Third, plaintiff's declaration, attached to his opposition, is devoid of any reference to his failure-to-protect claim against Drake.

Lastly, and most crucially, plaintiff is unable to provide a counter-argument to Drake's contention that ". . . there is no evidence that Drake subjectively knew of, let alone disregarded, an excessive risk to Plaintiff's safety." ECF No. 45, pg. 3. It is not disputed that plaintiff believes that Drake could have protected him from being slammed to the ground by holding on to plaintiff's arm. See ECF No. 44, pg. 43. However, an Eight Amendment violation requires more than a failure to prevent physical harm; it requires a sufficiently culpable mind. See Farmer, 511 U.S. at 834. Since it appears that Drake has satisfied his initial burden of demonstrating a lack of dispute as to a key material fact, the burden now shifts to plaintiff. For the reasons stated above, the court finds that plaintiff has failed to satisfy his burden and defendant Drake is entitled to summary judgement.

///
///
///
///

2.  Goodrich

As discussed below, the Court finds that plaintiff has failed to exhaust his administrative remedies against defendant Goodrich and dismissal of his claims against Goodrich is proper. In any event, the Court also finds defendant Goodrich is entitled to summary judgment on plaintiff's Eighth Amendment claim against him.

According to defendants McCord and Goodrich:

> Officer Goodrich is not liable for failure to protect because he had no chance to stop Officer McCord from bringing Rice to the ground. (DUF 19.) Rice conceded this fact during his deposition. (Id.) And Rice has not sued Officer Goodrich for the use of physical force, only for failure to intervene while he was allegedly dragged. (DUF 5.) Officer Goodrich is therefore entitled to judgment on any claim relating to the application of force to take Rice to the ground.

ECF No. 41-2, pg. 15.

In his opposition to both motions to dismiss, plaintiff does not argue against defendants' assertion that officer Goodrich lacked the opportunity to prevent plaintiff from being slammed to the ground. In fact, plaintiff admits to defendants' statement of undisputed facts which states:

> Defendant Stmt. 19.  Rice testified that officer Goodrich could not have possibly intervened in the taking of Rice to the ground . . .

> Plaintiff's Response  Admitted

ECF No. 44, pg. 25.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co., 475 U.S. at 586. Aside from re-iterating that he is in fact making a failure-to-protect claim, plaintiff's opposition is devoid of any evidentiary-supported arguments that Goodrich failed to protect him from McCord's alleged use of excessive force. See ECF No. 44, generally. To the point, plaintiff has admitted that Goodrich could not have intervened. Therefore, there is no genuine dispute as to a key element of plaintiff's Eighth Amendment claim against Goodrich and defendant Goodrich is also entitled to summary judgement on this claim.

///

///

### 3. McCord

Defendant McCord argues that: (1) he used reasonable force to secure plaintiff after plaintiff resisted an escort; and (2) any force used when "dragging" plaintiff was de minimis and was not objectively serious enough to violate the Eight Amendment. See ECF No. 41-2, pgs. 14-17.

#### a. Reasonableness of Force Used

As to his contention that reasonable force was used to secure plaintiff, McCord asserts:

> . . .The relationship between the need for force and the amount used was appropriate given the obvious difficulties securing Rice and his admitted refusal to be escorted. . . .
> Rice's version of events—that he was not resisting the officers' escort—is "blatantly contradicted" by the record, such that this Court need not adopt that version of the facts. *Scott v. Harris*, 550 U.S. at 380. The video of the incident shows that Officer Drake is off-balance and has to steady himself against the doorway. (DUF 17.) This uncontroverted evidence shows that Rice's own behavior was the source of the need for Officer McCord to use force to regain control, and allegations to the contrary are not entitled to any weight.
> The undisputed evidence shows that Officer McCord used only the necessary and proportionate amount of force to gain control of Rice after he was fighting against his escort. In the face of Defendants' evidence, Rice can only rely on mere allegations to support his claim of excessive force, which is insufficient to create any genuine dispute of fact. *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994); *McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009). Officer McCord is entitled to summary judgment for using force to bring Rice to the ground because it was done to gain Rice's compliance and not for any improper purpose.

ECF No. 41-2, pgs. 14-15.

Plaintiff disagrees that McCord's conduct was reasonable under the circumstances. Plaintiff's opposition includes a sworn declaration which makes the following statements:

> 11.    I told the officers I'm not hoping on one leg all the way back to my cell.

> 12.    Officer McCord told me to stop acting like a bitch. McCord grabbed my left arm. Drake grabbed my right arm. Both officers attempted to lift me off my chair. I gave them dead weight.

> 13.    Officer McCord and Drake begin to drag me down the hallway.

///

14. Nearing the end of the hallway I jumped up onto my good leg.

15. I told both officers to hold on.

16. At this point I was slammed to the ground by officer McCord.

* * *

21. Contrary to defendants' affidavits, during the incident on June 8, 2015 I did not resist or attempt to harm the officers involved.

ECF No. 44, pgs. 7-8.

Plaintiff's opposition also includes an attached response to McCord's statement of undisputed facts. Plaintiff makes the following relevant responses:

| | |
|---|---|
| Defendant Stmt. 16. | As officers McCord and Drake approached the sally port door, Rice started pulling away from officer Drake with a thrashing motion and resisted staff. . . |
| Plaintiff's Response | Disputed. Plaintiff never pulled away from officer Drake. (June 8 video at 1:02-1:10) |

* * *

| | |
|---|---|
| Defendant Stmt. 21. | If officer McCord's judgement, the force that he used to bring Rice to the ground was necessary to gain Rice's compliance in a safe and efficient manner, and was the least amount of force needed to regain control of Rice . . . |
| Plaintiff's Response | Disputed. The force used was unnecessary. (Plaint. Decl at 3 23-25) |
| Defendant Stmt. 22. | Rice's behavior presented a danger because he was pulling away from the escort . . . |
| Plaintiff's Response | Disputed. Plaintiff never attempted to pull away from escort. (June 8, 2015 video at 1:01-1:10) |

ECF No. 44, pgs. 24-26.

///

///

As is evident by the submissions above, there is a clear dispute between the parties as to the circumstances which led to McCord slamming plaintiff to the ground. Plaintiff contends that, beyond giving "dead weight," he did not resist or provoke McCord to slam him into the ground. Instead, plaintiff claims that McCord lashed out physically out of resentment from having to carry plaintiff. McCord, by contrast, argues that plaintiff was actively resisting transportation, and that, given plaintiff's thrashing, slamming him to the ground was both reasonable and necessary.

McCord further states that there is video evidence of the incident clearly demonstrating that "Rice's own behavior was the source of the need for Officer McCord to use force to regain control." ECF No. 41-2, pg. 15. McCord contends that this video recording places the reasonableness of his conduct beyond dispute. However, plaintiff disputes this assertion. Instead, plaintiff argues that the video shows that he was not actively resisting, and that McCord used unnecessary force. See ECF No. 44, pg. 24-26. The video evidence, ECF No. 43, shows a prisoner, accompanied by three guards struggling to leave a hallway, ultimately resulting in one guard bringing the prisoner to the ground. However, the video does not so clearly support one party's description of events such that a reasonable trier of fact could only reach one conclusion. To the contrary, the video is susceptible to interpretation. Therefore, the Court finds there is a material dispute as to plaintiff's excessive force claim against McCord.

b.    Whether Force Used was De Minimis

Defendants argue that McCord's use of force was de minimis because:

> . . .At no point was Rice's entire body dragged on the floor, and Rice did not appear to be in pain. (*Id*.) This evidence shows that the officers used the minimal amount of force necessary to secure Rice's compliance after he refused to leave the medical appointment. *See Zinser v. Dawson*, No. 2:15cv01459, 2016 WL 304306, at *2 (D. Nev. Jan. 25, 2016) (allegations that the plaintiff was dragged to a unit, when he failed to comply with orders and suffered no injury, did not state a claim for excessive force).
> . . .While Rice claims to have suffered some back pain, he allegedly sustained this injury when he was taken to the ground, not when his feet dragged on the floor for a brief period. (DUF 24-26.) No allegations show that Rice was separately injured to the extent that he was "dragged" for a short distance. (*Id*.)

ECF No. 41-2, pg. 16

The Court finds defendants' argument unconvincing. By the defendants' own admission above, plaintiff does in fact allege an injury in the form of back pain resulting from McCord slamming plaintiff to the ground. As demonstrated throughout plaintiff's complaint and opposition, plaintiff's excessive force claim stems not only from being dragged across the floor but also from McCord taking plaintiff to the ground for, allegedly, no reason. See ECF Nos. 1 and 44, generally.

Alternatively, while the severity of the plaintiff's injury is a relevant factor in determining whether the use of force was "de minimis," "it does not by itself show that [d]efendant's actions were reasonable as a matter of law." Starkey v. Hernandez, No. 3:17-CV-1158 JLS (KSC), 2019 U.S. Dist. LEXIS 69830, at *15 (S.D. Cal. Apr. 24, 2019). "The Supreme Court has expressly rejected the notion that a significant injury is [required] to show excessive force under the Eight Amendment." Id. (referencing Wilkins v. Gaddy, 559 U.S. 34, 38-39 (2010)). Thus, while a reasonable trier of fact may conclude that the potentially minimal nature of plaintiff's injury supports defendants' claim that the amount of force used was measured and necessary under the circumstances, a reasonable trier of fact could also determine that, based on plaintiff's allegations, the defendant acted maliciously and with the intent of causing harm. Therefore, there is a genuine dispute of fact as to plaintiff's excessive force claim against McCord.

**B.** **Exhaustion**

Defendants argue that plaintiff did not exhaust his failure-to-protect claim against Goodrich. Specifically, defendants state:

> Here, Rice admittedly submitted only one grievance relevant to his claims in this lawsuit. (DUF 40-41.) That grievance concerned allegations against Officers McCord and Drake for the use of force, but did not name Officer Goodrich and did not state that the officer failed to protect Rice from harm. (DUF 42-44.) In fact, Rice raised that allegation for the first time *after* the prison investigated and responded to the grievance at the second level of review. (DUF 44.) The prison did not address these new allegations against Officer Goodrich at the third level. (DUF 45.)
> Rice's grievance against two other officers did not exhaust his claims against Officer Goodrich. If Rice wished to raise an issue with Officer Goodrich's conduct, he had to describe that conduct in his initial grievance. (DUF 38, 39.) Remedies are not exhausted for persons named during the grievance process who were not described in the initial

grievance form. (*Id.*; Cal. Code Regs. tit. 15, § 3084.1(b); see Woodford v. Ngo, 548 U.S. at 90 (exhaustion "demands compliance with an agency's deadlines and other critical procedural rules").) The failure-to-protect claim against Officer Goodrich should be dismissed on exhaustion grounds as well.

ECF No. 41-2, pg. 18.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in first instance. See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate. See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the

23

quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations.  In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue.  See Cal. Code Regs. tit. 15, § 3084.2(a).  These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy.  See id.  Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures.  See Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein.  See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a).  Group appeals are permitted on the proper form with each inmate clearly identified, and signed by each member of the group.  See Cal. Code Regs. tit 15, § 3084.2(h).

Here, defendants have clearly asserted lack of exhaustion as an affirmative defense to plaintiff's claim against Goodrich. See ECF No. 41-2, pgs. 17-18. In particular, the undisputed evidence shows that Goodrich was not referenced in plaintiff's initial administrative grievance. See ECF No. 44, pgs. 30-31; see also ECF No. 42, pg. 28.  Since defendants have demonstrated that the allegations against Goodrich were not included in the original administrative grievance, plaintiff bears the burden of showing that this omission was caused by some frustration in grievance process. However, plaintiff's opposition neither addresses defendants' exhaustion argument nor provides any reason for why plaintiff did not include Goodrich in the initial

administrative grievance. Therefore, plaintiff failed to exhaust his administrative remedies and defendant Goodrich is entitled to summary judgement.

C.     **Retaliation Claims**

The court finds that defendant McCord is entitled to summary judgement as to plaintiff's First Amendment retaliation claim.

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

In his reply to plaintiff's opposition, defendant McCord identifies two separate factual bases for plaintiff's First Amendment claim: (1) that McCord allegedly took hostile action against plaintiff because plaintiff had filed prior lawsuits against McCord's co-workers; and (2) that McCord allegedly submitted a false disciplinary report against plaintiff as retaliation for refusing to be transported away from the treatment center without a wheelchair. See ECF No. 46, pgs. 7-8. Specifically, defendant states that:

> Rice's retaliation claim fails to the extent that he claims that Officer McCord acted because of knowledge of a prior lawsuit. He does not, and cannot, dispute evidence showing that Officer McCord did not know of a separate lawsuit filed against another staff member, and that Officer McCord would have taken Rice to the ground regardless of that

25

knowledge. (ECF No. 44 at 26:16-22; ECF No. 41-4 at 3:1-5 (showing Officer McCord's lack of knowledge of another lawsuit).) . . .

Rice also appears to claim that Officer McCord retaliated by submitting a disciplinary report because he was "angry with Plaintiff for refusing to leave the BTTA without wheelchair." (ECF No. 44 at 26:20-24.) But Rice's refusal to leave the clinic is not "protected conduct" sufficient to support a retaliation claim. In fact, if a prisoner "violates a legitimate prison regulation, he is not engaged in protected conduct . . . " and cannot proceed with a retaliation claim based on that conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *see also East v. Kabonic*, No. 1:10-CV-01053-AWI-DL, 2011 WL 1343138, at *2 (E.D. Cal. Apr. 7, 2011) (refusal to accept a cell mate is not protected conduct), *report and recommendation adopted*, No. 1:10-CV-01053-AWI, 2011 WL 3319625 (E.D. Cal. Aug. 1, 2011), *aff'd*, 474 F. App'x 583 (9th Cir. 2012).

ECF No. 46, pgs. 7-8.

Plaintiff argues in his opposition that McCord's decision to tackle plaintiff to the ground was motivated by a desire for retaliation. Plaintiff states in his attached declaration that "Officer McCord was angry with plaintiff for him refusing to leave [the treatment center] without [a] wheelchair." ECF No. 44, pg. 8. Additionally, plaintiff disputes the following statement of defendants' list of undisputed facts:

| | |
|---|---|
| Defendants' Stmt. 33. | Officer McCord did not act out of a desire to retaliate against Rice and would have issued a disciplinary report regardless of whether Rice had submitted a prison grievance about the June 8, 2015 incident. . . . |
| Plaintiff's Response | Disputed. Officer McCord was angry with plaintiff for refusing to leave [treatment center] without wheelchair (pltf Decl. 3-27[)] |

As to the retaliation claim based on previously filed lawsuits, the Court finds defendants' arguments persuasive. Defendants' motion argues that McCord would have taken plaintiff to the ground regardless of any prior lawsuits. <u>See</u> ECF No. 41-3, pg. 4 (Statement of Undisputed Facts). By contrast, plaintiff's opposition is devoid of any argument or evidentiary support for the assertion that McCord acted with excessive force because of plaintiff's previous lawsuits against other prison employees. There is no mention of this retaliatory motive in plaintiff's attached declaration, nor in his list of "genuine issues of material fact." <u>See</u> ECF No. 44. Despite responding to defendants' attached list of undisputed facts, plaintiff does not refute

26

the following statement:

> Plaintiff Stmt. 23.     Officer McCord would have made the decision to take Rice to the ground regardless of whether he had knowledge of a separate lawsuit filed by Rice, because Rice refused to act appropriately during the escort and his behavior threatened the safety and security of the institution . . .
>
> Defendant Response     [NO RESPONSE MADE]
>
> ECF No. 44, pg. 26.

Therefore, since it appears that McCord has satisfied his initial burden, and plaintiff offers no countering evidence, plaintiff's First Amendment claim may not proceed on a claim rooted in retaliation for previously filed lawsuit against fellow prison employees.

As for the retaliation claim based on plaintiff's refusal to leave the treatment center without a wheelchair, the Court similarly finds defendants' arguments convincing. The Court acknowledges that fraudulent disciplinary reports submitted by prison officers can be the basis for a First Amendment violation. Garcia v. Strayhorn, No. 13-CV-807-BEN (KSC), 2014 U.S. Dist. LEXIS 123660, at *26 (S.D. Cal. Sep. 3, 2014). Also, the parties' conflicting accounts of McCord's taking plaintiff to the ground demonstrate a dispute as to whether there was a retaliatory motive behind McCord's conduct. See above, section (IV)(A) (discussion as to whether McCord's tackling of plaintiff served a legitimate penological interest or was done with malicious intent).

However, as defendant points out, it is not clear from plaintiff's arguments what, if any, protected conduct forms the basis of his retaliation claim. Defendant argues that he filed a disciplinary report against plaintiff for ". . . struggling against his escort and resisting a peace officer." ECF No. 41-2, pgs. 21-22. Also, McCord argues that an inmate's refusal to follow a prison official's instructions to return to his building following a completed medical appointment is not protected conduct. See ECF 46, pg. 8; see also Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir. 2001) (asserting that the violation of legitimate prison regulations is not a proper foundation for retaliation claims).

///

Plaintiff, by contrast, offers no support for the argument that he was engaged in protected conduct under the First Amendment at the time of the incident. Plaintiff does attach an excerpt from Operational Procedure # 129 Psychiatric Services Unit, outlining the proper procedures for the escort of inmates to and from the treatment center. However, plaintiff makes no reference to this exhibit nor claims that McCord's instructions for plaintiff to return to his building were improper. Plaintiff also does not refute McCord's assertion that plaintiff's refusal to leave without a wheel chair was not protected conduct. Lastly, neither plaintiff's declaration, his responses to opposing statements of undisputed facts, nor his own opposition's "Argument" section describes any alternative activity which may reasonably be construed as protected conduct under the First Amendment. See ECF No. 44, generally. Therefore, as to plaintiff's First Amendment retaliation claim, defendant McCord is entitled to summary judgement.

### D.  Qualified Immunity

All defendants argue they are entitled to qualified immunity on plaintiff's Eighth Amendment claims.  As explained below, the Court finds that defendant McCord is not entitled to qualified immunity, while defendants Goodrich and Drake are entitled qualified immunity.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).

Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. See Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

1.    McCord

Defendant McCord asserts that he is entitled to qualified immunity. Specifically, McCord states:

> Here, the first qualified-immunity question is whether established law put Officer McCord on notice that it was unconstitutional to take a resisting inmate to the ground to secure compliance and prevent the

inmate from escaping an escort. It did not. As of June 2015, it was not clearly established that bringing an insubordinate inmate to the ground and securing him in restraints amounts to a constitutional violation. . . .

The second qualified immunity question is whether it was clearly unconstitutional to escort Rice from the clinic when Rice was refusing to leave, and to allow Rice's feet to drag on the ground as Rice refused to walk. A similar legal analysis applies. No law would have placed Officer McCord on notice that it was inappropriate to lift Rice from his chair and help him to walk for a short distance. Medical staff determined that Rice did not need a cane or a wheelchair but Rice refused to walk. (DUF 6, 8, 13-14.)

ECF No. 41-2, pgs. 19-20.

As for the first step of the inquiry, the facts alleged show the defendant's conduct violated a constitutional right. As discussed above, there is a genuine dispute as to whether McCord's act of slamming plaintiff to the ground was a reasonable detainment of a prisoner or a malicious act of excessive force. Plaintiff alleges that McCord: (1) dragged plaintiff across the floor, (2) called him a "bitch", and (3) despite plaintiff showing no resistance, slammed him into the ground. See ECF No. 44, pgs. 6-8. Since, at this stage, both qualified immunity and summary judgement analysis requires factual disputes to be construed in a light most favorable to plaintiff, a reasonable jury may plausibly find that McCord's conduct violated the Eight Amendment.

As for the second step of the inquiry, the court also finds that the right was clearly established at the time of the incident. It is well established that an inmate, who neither resists nor poses an immediate threat, has a right to be free from being slammed to the ground in the manner alleged. Starkey v. Hernandez, No. 3:17-CV-1158 JLS (KSC), 2019 U.S. Dist. LEXIS 69830, at *13-14 (S.D. Cal. Apr. 24, 2019) (summary judgement denied where there was genuine dispute as to whether prison official tackled plaintiff for no justifiable reason). Defendants' assertion that "[n]o law would have placed Officer McCord on notice that it was inappropriate to lift Rice from his chair and help him to walk for a short distance[,]" is presumptive and disregards the genuine dispute as to the reasonableness of McCord's conduct during the escort. Therefore, the final inquiry is whether McCord could have reasonably, but mistakenly, believed that his conduct did not violate plaintiff's rights. Since plaintiff's allegations here contend that he neither resisted nor provoked McCord, there does not appear to be a plausible scenario in which defendant, a prison officer, would have considered it lawful to handle an inmate as alleged for no reason. Thus,

McCord is not entitled to qualified immunity at this time.

### 2. Goodrich

Defendant Goodrich asserts that he is entitled to qualified immunity. McCord and Goodrich's joint motion states that:

> . . .[N]o facts show that a reasonable official in Officer Goodrich's position would have known that he had to intervene in order to avoid violating the Constitution. Because it cannot be said that their actions were unconstitutional "beyond debate," the officers are qualifiedly immune.

ECF No. 41-2, pg. 20.

The basis of Goodrich's argument here is that, even if plaintiff could make out a constitutional violation against him, the right was not so clearly established such that a reasonable officer in Goodrich's position would have known to intervene or risk violating that right. This court agrees. As discussed above, plaintiff admits that officer Goodrich could not have possibly intervened in the taking of Rice to the ground. Therefore, assuming plaintiff's rights were violated, Goodrich's failure to protect must have stemmed from a failure to prevent the attack. It is not clear from either plaintiff's complaint or his opposition what sort of preventative measures Goodrich was expected to have executed to avoid violating the Eight Amendment. Plaintiff's opposition offers no clarification on how Goodrich would have known McCord was going to attack plaintiff and what precisely Goodrich could have done but failed to do. Therefore, any right Goodrich is alleged to have violated was not clearly established at the time of the incident and Goodrich is entitled to qualified immunity.

### 3. Drake

Defendant Drake asserts that he is entitled to qualified immunity. Drake states:

> . . .[E]ven if a constitutional violation could be made out on the facts of this case, Drake is still entitled to qualified immunity because the contours of that right were not clearly established per the second Saucier prong. A reasonable correctional officer in Drake's position would not have known that utilizing *de minimus* force in transporting an inmate that refused directions to return to his cell on his own volition following a medical appointment could be construed as violating any of Plaintiff's constitutional rights. There is no case law that would have placed Drake

///

on notice that such conduct would be unconstitutional. Defendant Drake is accordingly entitled to qualified immunity.

ECF No. 40-1, pg. 8.

Drake argues that, despite plaintiff making out a potential constitutional violation, the contours of that right are not clearly established enough to place an officer such as Drake on notice. Here, it is also not clear from either plaintiff's complaint or his opposition what sort of preventative measures Drake was expected to have executed to avoid violating the Eight Amendment. As discussed above, plaintiff has provided no evidence that Drake subjectively knew of, let alone disregarded, an excessive risk to Plaintiff's safety. Plaintiff's improper sur reply to Goodrich's reply notes that "Defendant C. Drake heard Defendant R. McCord call plaintiff a 'bitch' before grabbing plaintiff's left arm." ECF No. 47, pg. 1. However, it is not clear from this statement whether plaintiff is alleging that Drake violated his rights by not anticipating that McCord would physically harm plaintiff after using the word "bitch." If so, plaintiff provides no support for such an argument. Thus, any constitutional right which might have been violated by Drake did not have clearly established contours such that a reasonable official would understand that what he is doing violates that right. Therefore, Drake is entitled to qualified immunity.

///

///

///

///

///

///

///

///

///

///

///

# V. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.     Defendant Drake's motion for summary judgement (ECF No. 40) be granted;

2.     Defendants Goodrich and McCords' motion for summary judgment (ECF No. 41) be granted in part and denied in part; and

3.     This action proceed on plaintiff's Eighth Amendment excessive force claim against McCord only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 28, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE